**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 18 CR 48** |
| v. ) | |
| ) | **Judge John Z. Lee** |
| **Edward Bases and John Pacilio,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Edward Bases and John Pacilio, who have been indicted on charges stemming from their trading practices in various commodity futures markets, move to compel the government to produce documents related to its 2016 request for information under the Mutual Legal Assistance Treaty ("MLAT") between the United States and the United Kingdom. Defendants contend that the government submitted that request not because it was interested in obtaining evidence for its investigation, but rather as a pretext to toll the statute of limitations on the charges it was considering at the time. In a rather remarkable development, the former lead prosecutor on this case, Ankush Khardori, now seeks to intervene as a third party. Although Khardori, who is no longer with the Department of Justice, agrees with the government that Defendants are not entitled to the production they demand, he claims that the 2016 MLAT request was indeed pretextual.

For the following reasons, the Defendants' motion to compel, as well as Khardori's motions to intervene and for leave to appear *pro hac vice*, are denied. Defendants' motion to seal their unredacted memorandum in support of the motion to compel is granted. The Court strikes the government's sealed *ex parte* filing in opposition to Khardori's motion to intervene, as well as the pending motions relating to that filing.

## I. Background

On December 9, 2016—before any charging documents were filed in this case, but after a grand jury had been impaneled—the government submitted an MLAT request to the UK for information from several banks, including Bank of America Merrill Lynch and Deutsche Bank ("the 2016 MLAT request"). On the basis of this request, the government applied to Judge Ruben Castillo, then Chief Judge of the Northern District of Illinois, for an order suspending the statute of limitations as to, *inter alia*, commodities fraud and spoofing charges "arising out of the grand jury's investigation [of several banks,] their . . . current or former employees . . . and related entities and individuals." Gov.'s *Ex Parte* Application for Suspension of Limitations at 1, ECF No. 240–3 (filed under seal); *see* 18 U.S.C. § 3292 (providing for the suspension of limitations periods in certain instances when the government is obtaining evidence located abroad). On December 20, 2016, Chief Judge Castillo granted the application and entered an order tolling the statute of limitations. ECF No. 120-1 ("the Tolling Order").

In January 2018, the government filed a criminal complaint against the Defendants. *See* Compl., ECF No. 1. The Complaint charged Bases with commodities fraud, in violation of 18 U.S.C. § 1348, and spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C), 13(a)(2), and 13c(a), for the period from June 2010 through April 2014. *Id.* at 1 (continuous pagination). The Complaint also charged Pacilio with commodities fraud, for the period from January 2010 through April 2011. *Id.* Because commodities fraud has a six-year statute of limitations and spoofing has a five-year statute of limitations, the Complaint relied upon the Tolling Order to establish the timeliness of the charges. *Id.* at 4 n.1 (continuous pagination).

Six months later, the grand jury returned an indictment charging the Defendants with conspiracy to commit wire fraud and commodities fraud for the period from 2007 through 2013, in violation of 18 U.S.C. § 1349. Indictment at 4–9, ECF No. 66. The Indictment also charged Bases with commodities fraud for the period from June 2009 through January 2014 and Pacilio with commodities fraud for the period from August 2009 through October 2014. *Id.* at 9–10. Finally, the Indictment charged Pacilio with spoofing on four specific dates in 2014. *Id.* at 10–11. The charges in the Indictment were timely without any reliance on the Tolling Order.

In August 2018, as part of its initial discovery production, the government produced the Tolling Order while informing the Defendants that the timeliness of the Indictment's charges did not depend on the Order. Mem. in Supp. Mot. to Compel at 7, ECF No. 241. The Defendants subsequently moved to compel

3

production of the tolling application as well as the underlying MLAT request, arguing that the documents were needed to better contextualize a cooperation agreement between the government and a witness that had been reached shortly before the return of the Indictment, and for determining if the 2016 MLAT request had been legitimate or pretextual. *See* Mem. in Supp. of Defs.' Joint Mot. for Bill of Particulars and to Compel at 12–13, ECF No. 120. The government agreed to produce the tolling application, but not the MLAT request itself. Gov.'s Opp. to Joint Mot. for Bill of Particulars and to Compel at 4–5, ECF No. 136. The Court orally denied the motion on January 16, 2020. ECF No. 236.

In February 2020, media outlets reported that Ankush Khardori, the former lead prosecutor on this case, had left the DOJ and filed a complaint with its Office of the Inspector General ("OIG") in which he claimed that the government had used MLAT requests as a pretext to obtain tolling orders to buy more time to bring fraud cases. *See, e.g.*, ECF No. 241-2. Shortly thereafter, Defendants again asked the government to produce documents relating to the 2016 MLAT request and Khardori's allegations as reported in the media. 2/4/20 Letter to Gov't, ECF No. 241–4. More specifically, Defendants requested Khardori's OIG complaint and the documents it cited, the 2016 MLAT request, documents showing the government's purpose for submitting the MLAT request and tolling application, documents revealing the government's reason for previously refusing to produce documents related to the MLAT request, and documents concerning any purported misconduct by Khardori or any other prosecutor in connection with the case. *Id.*

4

at 1–2. The government responded that it did not have any additional discoverable materials to which Defendants were entitled under the Federal Rules of Criminal Procedure or controlling caselaw. Resp. to Mot. to Compel at 6, ECF No. 257.

On February 25, 2020, Defendants filed the instant motion to compel production of these documents. Mot. to Compel, ECF No. 238. The motion is grounded in the contention that the government based its tolling application on a pretextual MLAT request and that this was misconduct that prejudiced the Defendants. Mem. in Supp. Mot. to Compel at 1–3. Defendants add that the documents are material to their trial preparation, including for cross-examination of witnesses. *Id.* at 14–15.

Two months after Defendants filed the instant motion to compel, Khardori moved to address the motion as a third party. ECF Nos. 272, 295. While Khardori claims that the Defendants are not entitled to the materials they seek, he suggests that the government's MLAT request may have in fact been pretextual. Khardori's Br. Regarding Mot. to Compel at 1–3, ECF No. 272. He adds that his intervention is warranted by his desire to prevent the government from slandering him in its filings and other statements in this case. Khardori's Reply in Supp. Mot. to Intervene at 3, ECF No. 291.

## II. Analysis

### A.  Defendants' Motion to Compel

Defendants' motion to compel discovery of information relating to the 2016 MLAT request is premised on the contention that the government engaged in

5

"prejudicial misconduct" by seeking tolling of the statute of limitations on the basis of that request. Reply in Supp. of Mot. to Compel at 4, ECF No. 281. But Defendants have not made a colorable showing of either misconduct or prejudice. *See United States v. Goulding*, 26 F.3d 656, 662 (7th Cir. 1994) (stating that to compel discovery regarding claims of prosecutorial misconduct, the defendant must show there is a "colorable basis" for the claims). Nor have Defendants made a *prima facie* showing that the documents at issue are otherwise material to their trial preparation. *See* Fed. R. Crim. P. 16(a)(1). As such, the motion to compel is denied.

### 1. Defendants have not made a colorable showing of governmental misconduct.

According to Defendants' theory, when the government files an application to toll the statute of limitations under 18 U.S.C. § 3292, it is representing something to the court about its motivations for pursuing the foreign evidence. *See, e.g.*, Mem. in Supp. Mot. to Compel at 1, 14 (arguing that the government "deceived" and "committed a fraud on the Court" in seeking the Tolling Order because it allegedly had no "genuine need to obtain [the] foreign evidence"); *id.* at 3 (arguing that the Court should compel discovery on the ground that the government violated its duty of candor by allegedly requesting foreign evidence merely to suspend the limitations period). But Defendants' theory finds no support in the pertinent statutory text or the caselaw interpreting it.

Starting with the statute itself, section 3292 provides that:

6

> Upon application of the United States, filed before return of an Indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country. . . .

18 U.S.C. § 3292(a)(1). "The statute therefore requires a district court to suspend the running of a statute of limitations upon an appropriate application showing: (1) that evidence of an offense being investigated by a grand jury is in a foreign country; and (2) that such evidence has been officially requested." *United States v. Lyttle*, 667 F.3d 220, 224 (2d Cir. 2012).

Absent from this text is any instruction for the government to establish its motivations behind seeking the requested evidence. Instead, in seeking tolling under section 3292, the government need only show that the requested information is in a foreign country and that the government has requested it. And, whenever the government makes these representations and supports them by a preponderance of the evidence, the statute provides that the district court "shall"— *i.e.*, is *required* to—toll the running of the limitations period, without consideration of any other factors.

Numerous courts have recognized the narrowness of this inquiry. For instance, the Second and Eleventh Circuits have held that, so long as the government shows that an official request has been made for evidence reasonably believed to be in a foreign country, the district court must order tolling

7

notwithstanding other considerations, including "whether [the government] might have been able to obtain the foreign evidence by other means" and whether the evidence is "pivotal" to the prosecution. *Lyttle*, 667 F.3d at 225; *see United States v. Broughton*, 689 F.3d 1260, 1273, 1275 (11th Cir. 2012) (stating that "a district court's inquiry [under § 3292] is *constrained* by the boundaries of the two elements [i.e., an official request and evidence located in the foreign country] required by [the statute]," and thus it is irrelevant to the court whether, *inter alia*, the evidence is in fact "needed at trial" (emphasis added) (citing *Lyttle*, 667 F.3d at 225)). Similarly, the Ninth Circuit in *United States v. DeGeorge* rejected the defendant's theory that tolling under § 3292 is limited to those instances where the government does not already have the evidence in its possession, explaining that such a limitation is "entirely without textual support in the statute." 380 F.3d 1203, 1213 (9th Cir. 2004).

It follows then that, so long as the government has established the two statutory requirements—presence of information abroad and a request for it—the government's motivation behind the MLAT request is not relevant to whether the applicable statute of limitations should be tolled; it must. *See United States v. Chen*, No. 1-12-CR-350-03-SCJ, 2014 WL 5307518, at *13 (N.D. Ga. Oct. 15, 2014) (finding "no case law supporting [defendant's] argument that a pretextual MLAT request voids [the request or any tolling order relying on it]"); *United States v. Kachkar*, No. 16-20595-CR-GAYLES, 2018 WL 6933159, at *4 (S.D. Fla. Dec. 19, 2018) (rejecting that a tolling order under § 3292 is invalid even assuming that

8

the government's pursuit of foreign evidence "was merely a pretext, designed to forestall the expiration of the statute of limitations").

Reasonable minds can disagree as to the wisdom of the process section 3292 lays out. But that debate is for the political branches of our government and beyond the purview of this Court. *See Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation."). It is worth noting, however, that section 3292 does not leave prosecutorial conduct entirely unfettered. *See United States v. Torres*, 318 F.3d 1058, 1064 (11th Cir. 2003) (detailing two safeguards Congress placed in § 3292 against unlimited prosecutorial discretion, namely a general three-year cap on the suspension period and a six-month cap where the foreign government takes final action on the evidentiary request before the statute of limitations would otherwise expire); *see also United States v. Hagege*, 437 F.3d 943, 955 (9th Cir. 2006) (stating that § 3292 was crafted to "create a balance between permitting the government to obtain foreign evidence and ensuring that the defendant is given the protections of predictability and promptness which underlie statutes of limitations"). Whether Congress, as it weighed various interests, should have added more safeguards through, for example, requiring the government to establish certain purposes for requesting the foreign evidence, or requiring the government to pursue the evidence with some degree of diligence, *see United States v. Bischel*, 61 F.3d 1429, 1435 (9th Cir. 1995), is immaterial for present purposes. *See DeGeorge*, 380 F.3d

9

at 1213 ("Regardless of whether it would be good policy to impose the requirements urged by [the Defendant] before allowing suspension of the statute of limitations, Congress did not do so.").

What *is* relevant now is that, based section 3292's clear statutory text, the government need only show by a preponderance of the evidence that the information at issue is in foreign hands and that the government requested it. And this is precisely what the government stated in its section 3292 application before then-Chief Judge Castillo.[1] Moreover, Defendants here do not allege, and certainly do not plausibly allege, that the tolling application itself was falsified, or that the evidence described in the 2016 MLAT request did not exist or was unrelated to matters within the scope of the government's investigation.

In short, contrary to Defendants' characterization, the government's application for tolling under section 3292 did not deceive the Court as to the government's motivations for seeking foreign evidence through the 2016 MLAT request, as it never made (nor needed to make) any representations to the Court about those motivations in the first place.[2]

---

[1] The application and the accompanying declaration (which was submitted for *in camera* review) merely assert facts that hew closely to section 3292's narrow inquiry—whether the government has requested evidence of an offense reasonably believed to be in a foreign country. *See, e.g.*, Gov.'s *Ex Parte* Application for Suspension of Limitations at 7; Mem. in Supp. Mot. to Compel at 4 (noting that, in its "representations regarding its need for the MLAT request," the government stated only that "[t]he United States has reason to believe that documents, records, and other evidence, related to these offenses is located in the United Kingdom").

[2] Consistent with this reasoning, the Court also rejects the Defendants' contention that dismissal of the operative indictment would be appropriate if it were shown that the 2016 MLAT request was pretextual. *See, e.g.*, Mem. Supp. Mot. to Compel at 3–4 (suggesting that this case should be dismissed if the government's "true motivation"

### 2. Defendants have not made a colorable showing of prejudice.

Furthermore, even assuming *arguendo* that the Defendants have made a colorable showing of prosecutorial misconduct, they have failed to show prejudice. *See, e.g., United States v. Antonelli*, 234 F.3d 1274, 1274 (7th Cir. 2000) (stating, in the context of a claim of pre-indictment delay, that a defendant must show that "the delay caused actual and substantial prejudice" (citation omitted)). Significantly, it is undisputed that the charges in the operative, second superseding indictment do not rely on the Tolling Order at all. *See* Second Superseding Indictment, ECF No. 244; Mem. in Supp. Mot. to Compel at 14–15; *see also* 3/9/2018 hearing in *United States v. Bogucki*, No. 18-cr-00021 (N.D. Cal.), at 16, ECF No. 287-1 (stating that any inquiry into the government's "true" motivations for its evidentiary request underlying the § 3292 tolling order would be "unnecessary or mooted" if the government filed a superseding indictment that did not rely on that order).

Undeterred, Defendants proffer two arguments for why they were nonetheless prejudiced by the 2016 MLAT request and the associated Tolling Order. First, they float the possibility that the government used the Order to fraudulently induce cooperation of a witness, who agreed to assist the government in the period between the filing of the Complaint and the return of the Indictment. *See* Mem. in Supp. Mot. to Compel at 3; Reply in Supp. Mot. to Compel at 9. Specifically, Defendants contend that the government used the MLAT request and

---

behind abandoning reliance on the Tolling Order is uneasiness about having applied for that Order on the basis of pretextual MLAT request).

the Tolling Order to deceptively give the witness the impression that he still could face criminal charges for the tolled counts, even though the tolling order was fraudulently obtained (at least, as Defendants see it). *See id.*

Defendants' argument fails for several reasons. First, much of the conduct that formed the basis of the non-prosecution agreement between the witness and the government took place into 2012—well within the six-year limitations period for commodities fraud and the ten-year limitations period for wire fraud affecting a financial institution with which Defendants were eventually charged. *See* Gov.'s Sur-reply Regarding Mot. Compel. at 3–4, ECF No. 287; Reply in Supp. Mot. to Compel at 15–16 ("By the time its cooperator agreed to a non-prosecution agreement, *much of* the conduct alleged by the government . . . would have been outside the applicable limitations period for the . . . charges under consideration at the time." (emphasis added)). That an individual faces potentially serious criminal exposure is incentive enough for them to strike a deal with the prosecution. *See generally United States v. Marchan*, 935 F.3d 540, 547–49 (7th Cir. 2019). To say that the witness at issue here cooperated solely because he feared being prosecuted for charges in addition to the already-serious charges of commodities fraud and wire fraud is speculative, at best.

Second, Defendants vaguely assert that the 2016 MLAT request and Tolling Order caused them to "[lose] trading data for physical commodities and the market for options on precious metals futures markets." Mem. in Supp. Mot. to Compel at 6. Without much elaboration, Defendants contend that Bank of America Merrill

12

Lynch, at some point, possessed potentially exculpatory data, but then discarded that evidence by the time the Complaint was filed in January 2018. *Id.* at 13–14. Had the government not filed for a Tolling Order, the argument goes, Defendants likely would have been charged in late 2016 and, thus, been on notice to pursue the data before it was destroyed. *Id.*

But, Defendants provide no indication that they would have been able to access the data even in late 2016. And they provide little or no detail about the data itself—where and how it was maintained, why it was discarded, and the typical retention period for such information. What is more, the bit of detail the Defendants do provide—for example, they assert that some of the lost information covers the period of 2008 through early 2011, Reply in Supp. Mot. Compel at 7 n.3—offers no confidence that the data, which allegedly had been deleted by the beginning of 2018, would have still been available just thirteen months earlier.

### 3. Defendants have not shown that the documents at issue are material to their trial preparation.

Apart from their direct claim of prosecutorial misconduct, the Defendants contend that they are entitled documents relating to the 2016 MLAT request and the tolling application because the documents are "necessary and material" for their trial preparation. *See* Mem. in Supp. Mot. to Compel at 12–15; Fed. R. Crim. P. 16(a)(1)(E) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents . . . material to preparing the defense."). Setting aside the government's invocation of various privileges, *see* Resp. to Mot. to Compel at 1–2, 11, Defendants fail to show why the documents

13

would be material to their defense. *See United States v. Mitrovich*, No. 18 CR 789, 2020 WL 2084991, at *1 (N.D. Ill. Apr. 30, 2020) ("Rule 16(a)(1)(E) imposes on [the defendant] the burden to 'make at least a *prima facie* showing that the requested items are material to his defense.'" (quoting *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir. 1991))).

Defendants first argue that the documents would be material to their cross-examination of testifying FBI agents. Mem. in Supp. Mot. to Compel at 14; Reply in Supp. Mot. to Compel at 14–15. To this point, Defendants suggest that they can use the materials to establish investigative bias on the part of the agents, who they claim were part of, or at least aware of, the government's plan to "knowingly [mislead] the Court" by filing the tolling request. Reply in Supp. Mot. to Compel at 14; *see United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999) ("[B]ias is one of five acceptable methods of attacking a witness's credibility." (quoting *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996)). But, as discussed above, the government's tolling application contained no statements as to motive, and none were needed. Moreover, even if motive were a proper area for cross-examination, Defendants offer no evidence that any FBI agents knew about the prosecution's decision to apply for tolling or the reasons behind it. Reply in Supp. Mot. to Compel at 14–15.

Second, Defendants claim that the MLAT-related documents will enable them to cross-examine the cooperating witness as to whether he was misled about the extent of his criminal exposure and, thus, fraudulently induced into

14

cooperating. Mem. in Supp. Mot. to Compel at 14–15; Reply in Supp. Mot. to Compel at 15–16. But, as already noted, Defendants do not deny that the non-prosecution agreement covered conduct that was unaffected by the Tolling Order. *See* Reply in Supp. Mot. to Compel at 15–16. And, relatedly, it is not clear how the documents pertaining to the 2016 MLAT request—even if they showed that the request was pretextual—could help establish that the witness cooperated because the government had exaggerated his criminal exposure. Thus, while Defendants certainly are entitled to cross-examine the witness regarding his decision to cooperate, *see, e.g.*, *United States v. Hunter*, 932 F.3d 610, 619 (7th Cir. 2019), they have not shown that the documents at issue would be material to those efforts.

\*\*\*

In sum, the Defendants have not made a colorable showing of governmental misconduct or prejudice, and they have not otherwise shown that the documents relating to the MLAT request are material to the preparation of their defense. Accordingly, Defendants' motion to compel is denied.

### B. Khardori's Motions to Intervene

Turning to Khardori's motions, his two motions for leave to intervene, and his motion to appear *pro hac vice* are denied. *See* ECF Nos. 272, 294, 295. The Federal Rules of Criminal Procedure do not provide for intervention by a third party, *see United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007), and, to the extent it is allowed, courts typically limit such intervention "to those instances

15

in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue," *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004); *see In re Associated Press*, 162 F.3d 503, 506–08 (7th Cir. 1998).

While Khardori states that he seeks to protect his "right not to be slandered" by the government during this case, Khardori's Reply in Supp. Mot. to Intervene at 3, he fails to identify any provision in the Constitution or a federal law that recognizes such a right. *See, e.g., Paul v. Davis*, 424 U.S. 693, 711 (1976) (observing that "the interest in reputation alone . . . is quite different from the 'liberty' or 'property'" protected by the Due Process Clause). Furthermore, Khardori has not otherwise shown, through precedent or reason, that reputational concerns may constitute an appropriate basis for third-party intervention in a criminal case. To the extent that Khardori feels aggrieved by the statements made by the government in this case, this is not the appropriate forum to pursue such civil claims. Therefore, Khardori's motions to intervene and related motion to appear are denied.³

---

³ In denying Khardori's motions for leave to intervene, the Court does not rely in any manner on the government's *ex parte*, sealed submission filed in response, *see* ECF No. 290. Accordingly, the Court strikes that submission, as well as the pending motions relating to it, *see* ECF No. 292 (the Defendants' motion for reconsideration of the Court's decision to allow ECF No. 290 to be filed under seal), ECF No. 298 (Khardori's motion to receive a copy of ECF No. 290).

### III. **Conclusion**

For the reasons explained above, Defendants' motion to compel, as well as Khardori's motions to intervene and for leave to appear *pro hac vice*, are denied. Defendants' motion to seal their unredacted memorandum in support of the motion to compel is granted. The Court strikes the government's sealed *ex parte* filing in opposition to Khardori's motion to intervene, as well as the pending motions relating to that filing.

**IT IS SO ORDERED**           ENTERED: 10/6/20

                                               _____
                                               **John Z. Lee**
                                               **United States District Judge**

Dated: October 6, 2020